UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DALTON S. CLARK,<br><br>Plaintiff,<br><br>v.<br><br>TEAH,<br>NP JONES,<br>DR. BEERS,<br>MS. SMITH,<br>DR. MILIKAN,<br><br>Defendants. | ) | No. 1:25-cv-00630-JRO-MG |

**ORDER RESOLVING CROSS MOTIONS FOR SUMMARY JUDGMENT AS TO EXHAUSTION DEFENSE**

Plaintiff Dalton S. Clark filed this action contending that he has been given constitutionally inadequate medical and mental health treatment while incarcerated at New Castle Correctional Facility ("New Castle"). Defendants Jaekar Teah, Celeste Jones, Kelsey Beers, Angela Smith, and Thomas Millikan ("Defendants") moved for summary judgment arguing that Clark failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. Clark has filed a cross-motion, arguing that summary judgment in his favor should issue.[1] For the reasons explained below, Defendants' motion, dkt [45], is **denied in part** and **granted in part**, and Clark's motion, dkt. [55], is **denied**.

[1] In the interest of justice and considering Mr. Clark's pro se status, the Court interprets Mr. Clark's motion and brief in support as also being his combined response to Defendants' motion for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable fact-finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. FACTUAL BACKGROUND

### A. Plaintiff's Claims

This lawsuit is proceeding on Clark's claims that Defendants were deliberately indifferent to his serious medical needs for two of his medical issues: his mental health concerns and his physical health concerns. *See* dkt. 18 at 6.

### B. Grievance Process

The IDOC has a standardized offender grievance process that inmates access on their tablets. Dkt. 47-1 at 2. The grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a level 1 appeal; and (3) submitting a level 2 appeal to IDOC's Central Office Grievance Manager. *Id.* Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. *Id.* The policy provides: "No grievance shall be rejected because an offender seeks an improper or unavailable remedy," subject to an exception not relevant to this case. Dkt. 57-1 at 31.

### C. Plaintiff's Attempts at Exhaustion

On February 16, 2024, Clark filed a grievance, No. 24-175178, about not receiving medication for his mental health concerns and for health care requests and grievances being ignored. *Id.* at 3; dkt. 47-2 at 1. He was given a response on April 18, 2024. Dkt. 47-3 at 2. Clark appealed the response five days later. *Id.* at 3. The grievance appeal response, dated April 30, 2024, told Clark that the

facility could not offer relief and he needed to work with Centurion Health or "take the next step in the grievance process." Dkt. 47-3 at 4. Clark submits a copy of the grievance appeal with the bottom portion (which initiates a level 2 appeal) filled out. Dkt. 57-1 at 17. He states in his sworn affidavit that he indicated his disagreement with the appeal response, signed it, and submitted the form to the grievance specialist on May 6, 2024, through his unit's mailbox. Dkt. 57-1 at 5. Defendants submit the sworn affidavit of Grievance Administrator Melissa Rutledge, in which she states that she searched "the grievance system, file, records[, and] the DELTA system" and could not find any copy of that appeal. Dkt. 65-1 at 2. She further states that, had that appeal been submitted to her office, it would have been date-stamped, forwarded to the grievance manager, and logged into the DELTA system. *Id.*

On April 30, 2025, Clark filed another grievance, No. 25-212059, about receiving Meloxicam, which is an ineffective treatment for his physical condition. Dkt. 47-4 at 2. His requested relief was: "I want and have a right to a real doctor[;] not these quacks you pay to tell us everything is fine just so you can pocket the money." *Id.* Grievance Specialist Rutledge returned the grievance, stating: "The relief you are seeking is not acceptable. 'A real doctor'? The doctor is 'a real doctor'. Please make your relief one that makes sense." Dkt. 47-4 at 3. Clark tried to appeal the returned grievance, but he was told that a returned grievance cannot be appealed and that he needed to fix the deficiency for which it was returned and resubmit the grievance within five days. *Id.* at 4.

## III. DISCUSSION

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

While the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.*

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Clark] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[A]n inmate is required to exhaust those, but only those, grievance procedures

that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted). "[A] prisoner need not exhaust 'where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.'" *Dowaun v. Wexford Health Sources, Inc.*, No. 21-2957, 2023 WL 5348345, at *2 (7th Cir. Aug. 21, 2023) (quoting *Booth v. Churner*, 532 U.S. 731, 736 (2001)).

Defendants argue that Clark failed to exhaust his administrative remedies because he did not file a level 2 appeal of his first grievance and because he did not fix and resubmit his second grievance. In his cross motion, Clark argues that Rutledge prevented him from exhausting the process.

Regarding the first grievance to address Clark's mental health issues, there is a genuine issue of material fact that precludes the Court awarding summary judgment to either side. There is evidence supporting both that he did and did not file a second level appeal. Thus, there is a factual dispute preventing the Court from resolving, on motions for summary judgment, whether Clark exhausted his administrative remedies regarding this grievance. *See Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.") (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Regarding the second grievance to address his complaints about medication for his physical condition, the undisputed evidence shows that Rutledge returned the grievance, asking Clark to clarify the relief he requested

and resubmit the grievance within five business days. Dkt. 47-4 at 4. Clark did not do so, thereby abandoning the grievance process with steps still available to him. As the Supreme Court has explained in *Ross*, an "available" remedy is one that is "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." *Ross*, 578 U.S. at 642. This accurately describes the grievance process that remained available to Clark. Rutledge's single request for clarification left open an easy path for Clark to continue pursuing his grievance, and he chose not to take it.

Moreover, nothing in the designated evidence suggests that Rutledge's conduct amounted to an attempt to "thwart . . . [Clark] from taking advantage of a grievance process through machination, misrepresentation, or intimidation," which would have rendered the grievance process unavailable to Clark. *Id.* at 634. Nor did Rutledge fail to "respond to a properly filed grievance" or "use . . . affirmative misconduct to prevent [Clark] from exhausting." *Breyley v. Fuchs*, 156 F.4th 845, 848 (7th Cir. 2025) (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) and citing *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024)).

The Seventh Circuit has never found remedies unavailable based on a single request for clarification on the relief sought by a prisoner with clear instructions for next steps. This is unlike *Davis v. Mason*, 881 F.3d 982 (7th Cir. 2018), where "the grievance coordinator kept rejecting Davis's grievances based on his purported noncompliance with unannounced or unexplained requirements." *Id.* at 986. Clark's situation is also different from what the Seventh Circuit considered in *Smallwood v. Williams*, 59 F.4th 306 (7th Cir.

2023), where the grievance specialist imposed a much greater burden of having to attempt informal resolution of a complaint before filing a grievance and then later rejected a timely grievance, *id.* at 319–320. Finally, unlike the "scavenger hunt" in *Hill v. Snyder*, 817 F.3d 1037 (7th Cir. 2016), where prison staff returned a grievance form with no clear direction about what correction the prisoner needed to make, Rutledge clearly informed Clark how he could clarify his grievance to have it accepted, *id.* at 1040. No reasonable jury could conclude that Rutledge thwarted Clark's efforts to exhaust or otherwise made the administrative remedy process unavailable to him.

* * *

Both of Clark's grievances relate to medical care he received at New Castle, but they cover different topics. The first relates to his mental health care, and the second to his physical health care. A fact dispute remains regarding exhaustion of remedies related to his mental health care. Defendants must decide how they wish to proceed to resolve those factual issues and inform the Court of that decision. However, the designated evidence shows Clark failed to exhaust his remedies related to his physical health care. Accordingly, the Court grants summary judgment to Defendants on that topic.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, dkt. [45], is **DENIED in part** as to Clark's claims about mental healthcare and

**GRANTED in part** as to his claims about physical healthcare, and Clark's motion for summary judgment, dkt. [55], is **DENIED**.

Regarding the exhaustion defense as to Clark's physical healthcare concerns, Defendants are **ordered** to do one of the following by **October 2, 2026**:

1. Request an evidentiary hearing consistent with *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008);
2. Preserve the defense for trial due to the exhaustion issue being intertwined with the merits, in accordance with *Perttu v. Richards*, 605 U.S. 460, 479 (2025); or
3. Withdraw the affirmative defense.

**SO ORDERED**.

Date: 9/11/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

DALTON S. CLARK
SPENCER COUNTY LAW ENFORCEMENT CENTER
120 N. 2nd St.
Rockport, IN 47635

All Electronically Registered Counsel